**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2879-23

KAREN SIBALICH and
MARGARET OWENS,
individually and as class
representatives on behalf of
others similarly situated,

      Plaintiffs-Appellants,

and

SPINE SURGERY ASSOCIATES
and AMBULATORY SURGICAL
CENTER OF SOMERSET,
individually and as class
representatives on behalf of
others similarly situated,

      Plaintiffs,

v.

NATIONWIDE MUTUAL
INSURANCE COMPANY,
NATIONWIDE AFFINITY
INSURANCE COMPANY OF
AMERICA, and NATIONWIDE
PROPERTY AND CASUALTY

INSURANCE COMPANY,

Defendants-Respondents.

_____

Argued May 6, 2026 – Decided August 4, 2026

Before Judges Rose and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0124-18.

Eric S. Pasternack argued the cause for appellants (Cohen Placitella & Roth PC, and Charles T. Kannebecker, attorneys; Eric S. Pasternack, Christopher M. Placitella, Michael Coren, and Charles T. Kannebecker, of counsel and on the briefs).

Mark L. Hanover (Dentons US LLP) of the Illinois bar, admitted pro hac vice, argued the cause for respondents (Dentons US LLP and Mark L. Hanover, attorneys; Mark L. Hanover and Ericka M. Lopes-McLeman, on the brief).

PER CURIAM

Plaintiffs Karen Sibalich and Margaret Owens, individually and as class representatives (collectively, insured plaintiffs), appeal from a May 16, 2024 Law Division order denying their motion for class certification of their action against defendants Nationwide Mutual Insurance Company (NMIC), Nationwide Affinity Insurance Company of America (NAICA) and Nationwide

Property and Casualty Insurance Company (NPCIC) (collectively, Nationwide). We affirm.

I.

The procedural history that led to the dismissal of plaintiffs' action is protracted but easily summarized. In March 2018, the insured plaintiffs, and Spine Surgery Associates and Ambulatory Surgical Center of Somerset, located in New Jersey, individually and as class representatives (together, health care provider plaintiffs), commenced this litigation by filing a putative class action complaint against Nationwide. The case was removed to federal court, but remanded to state court in September 2018. Thereafter, the insured plaintiffs and health care provider plaintiffs (collectively, plaintiffs) filed an amended complaint in April 2019, a second amended complaint in September 2019, and a third amended complaint in April 2022.[1]

As set forth in plaintiffs' third amended complaint, Sibalich and Owens resided in Pennsylvania and were insured under similar automobile insurance policies issued by Nationwide in that state. These policies provide, in pertinent

---

[1] In December 2021, the present motion judge granted Nationwide's motion for partial summary judgment, dismissing all claims asserted by the health care provider plaintiffs. In their third amended complaint, plaintiffs noted those claims were reasserted for appeal purposes and context. The health care provider plaintiffs are not parties to this appeal.

part: **"We** will pay all reasonable expenses for **necessary medical treatment and rehabilitative services."** The policies define "necessary medical treatment and rehabilitative services," but do not define "reasonable expenses."

Sibalich and Owens were injured in separate automobile accidents in Pennsylvania and thereafter treated by health care providers in that state and by the health care provider plaintiffs in New Jersey. The insured plaintiffs claim Nationwide violated the law by systematically applying an algorithm based on New Jersey's automobile medical fee schedule, commonly applied to personal injury protection (PIP) claims, to their insurance claims for medical treatment provided by the health care provider plaintiffs. The insured plaintiffs assert Nationwide was obligated to pay their claims at the usual, customary, and reasonable (UCR) rate.

Arising from these allegations, in their third amended complaint, the insured plaintiffs assert one count of breach of contract against NPCIC and NAICA, a separate breach of contract count against NMIC, one count alleging violations of Pennsylvania's Insurance Bad Faith Act, 42 Pa. Cons. Stat. § 8371

4

against NPCIC and NAICA, and a separate count alleging violations of the same act against NMIC.[2]

We glean from the record Nationwide contracted with Auto Injury Solutions (AIS) to process medical bills submitted for motor vehicle insurance claims. To facilitate AIS's review, Nationwide provided medical billing data and "automated rules." Those rules included Nationwide's hierarchy for the payment of charges: (1) pay the preferred provider organization (PPO) contract rate, if applicable; (2) if no PPO, pay according to the state fee schedule for every billing code covered by the fee schedule; (3) if no applicable PPO and no state fee schedule, pay the reasonable fee, which Nationwide set at eighty percent of the UCR rate; and (4) if none of the foregoing rules apply, pay the billed amount.

AIS agreed to "make all commercially reasonable efforts to implement all state mandated fee schedule changes within 30 days of receipt of data changes from certified entities." To calculate reasonable fees, AIS used data provided by FAIR Health, a commercial claims data repository. AIS provided the result

---

[2] The health care provider plaintiffs also asserted against Nationwide one count of claims for payment of their bills, one count of unjust enrichment, and one count of violations of section N.J.S.A. 56:8-19 of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -233.

of its reviews to Nationwide in an electronic format. Although AIS recommended payment amounts as to each line item reflected in the medical bills, pursuant to its contract with Nationwide, AIS did not ultimately decide the amount due.

More particularly, the "Payment of Claims" provision of their contract expressly stated the responsibilities of AIS and Nationwide. Among other terms, the provision states: "[AIS] is not a claims administrator and is engaged hereunder solely for the purpose of making recommendations with respect to the provision and payment of benefits." Further, "[Nationwide] shall independently evaluate and determine what action shall be taken." And "[Nationwide] retains sole and exclusive responsibility for all final determinations regarding its obligations or that of any other person to pay for or otherwise provide benefits to [Nationwide]'s insureds."

At deposition, Nationwide's designated representative, Kimberly Masters, who managed relations with AIS, confirmed Nationwide's claims adjusters were the ultimate decision-makers on the amounts payable. Masters testified, after the AIS computer program applied the pricing rules and generated recommendations, the adjuster engaged in a line-by-line review of the bills, including verifying the accuracy of billing codes, to ensure the treatment was

6

reasonable and necessary per the submitted documentation. Masters further stated, after that review, if the adjuster was satisfied with the pricing, the adjuster would approve the payment and generate the final explanation of review (EOR).

Masters explained, if there was a valid reason for doing so, the adjuster could edit the EOR and choose the "option to pay other" for any particular charge, but the adjuster could not choose that option if a fee schedule applied to the billing code. Thus, adjusters could not override the computer program to change the hierarchy of Nationwide's rules applied to the bill. Accordingly, if the program determined a state fee schedule applied to any particular line item charge, adjusters could not override that determination and authorize payment of some other amount, such as a reasonable fee calculation of eighty percent of the UCR rate, or payment of the billed amount. Relevant here, if a Pennsylvania policyholder sought treatment in New Jersey, the program would apply to the medical bills New Jersey pricing and fee schedules, and the adjuster could not override that determination.

Masters testified, to communicate these policies and procedures to its employees, Nationwide issued a document titled, "Reasonable Fee – First Party

7

Medical[,] Frequently Asked Questions" (FAQ).[3]  In its answer to the first FAQ,

"What is a Reasonable Fee (RF)," Nationwide provided the following definition:

> Reasonable Fee (RF) is also known as UCR - it is defined as the usual, customary, and reasonable provider fee for a given procedure or service in a determined geographic area.  It is based on Health[ ]care benchmarked actual provider charge data.
>
> It is calculated based on 3 components; Relative Value Unit, Conversion Factor and Geozip, then arranged in various percentiles.

As to question number 5, "What states will be using Reasonable Fee,"

Nationwide responded, "Reasonable Fee will be activated at a state level based

on the 'Treatment State,'" that is, "where services were rendered."  New Jersey

and Pennsylvania were listed among those states "using Reasonable Fee where

and when appropriate for first party medical bill review."

However, in response to the next question, "I handle claims in a state that

has a fee schedule, how will reasonable fee be used when there is a fee schedule

in place," Nationwide responded, "Any applicable fee schedule pricing will take

priority and be applied first.  For certain procedures, which do not have a fee

schedule value, reasonable fee may be applied to that individual line item

---

[3]  Masters testified a "reasonable fee" was not equivalent to a "reasonable expense" set forth in plaintiffs' insurance policies.

charge." And as to question number 7, "What happens with Reasonable Fee if there is a PPO Provider on the bill," Nationwide answered, "the contracted PPO rate is applied first to the bill."

Regarding question number 8, "Can I pay an amount other than the Reasonable Fee that is applied to a charge line item," Nationwide provided the following guidance:

> • The bill review system is a tool to assist you with evaluating reimbursement rates for medical services on first party medical claims.
> • Claim Associates should evaluate submitted bills based on their independent review and facts of the individual claim.
> • If you have questions concerning any bill review recommended amounts, please consult with your Claim Manager for guidance.
> • Claim Associates should continue to follow Best Claims Practices, and comply with state regulations and statutes in the review of medical bills submitted.

In the present matter, AIS processed the medical bills submitted for the claims filed by Sibalich and Owens, and issued recommended pricing, which the Nationwide claims adjusters accepted. The claims adjusters reviewed the medical bills to ensure they were related to the auto accidents at issue, to verify

9

the billing codes were appropriate to the injuries, and to determine whether to request documentation, an independent medical examination, or peer review.[4]

For the most part, the charges reflected in the bills submitted by the health care provider plaintiffs were priced under the New Jersey fee schedule. Line items not paid under the New Jersey fee schedule were paid based on a percentage of the UCR rate if the billing code for the expense was not included on the New Jersey fee schedule or, in certain instances, the adjusters overrode AIS's recommended payment and paid the bill in a different manner. For example, in those instances, payment was made at the billed rate or a negotiated rate.

Nationwide's payments to the health care provider plaintiffs did not satisfy the insured plaintiffs' medical bills in full, resulting in a substantial amount of unpaid medical bills. The health care provider plaintiffs did not participate in insurance networks or plans, and their billing rate was ninety-five percent of the UCR rate, based on data from FAIR Health or another similar company. The health care provider plaintiffs generally pursued the full amount of their bills through balance billing, unless it was unlawful to do so. Sometimes, the health care provider plaintiffs accepted less than the billed amounts when, for example,

---

[4] Nationwide sought peer review for some of Sibalich's medical treatment.

they treated patients subject to the New Jersey fee schedule. In other cases, they settled or litigated their claims. In this litigation, the health care provider plaintiffs were willing to accept eighty percent of the FAIR Health schedule.

The parties retained experts to support their positions on class certification. Plaintiffs' expert, Ron Luke, JD, PhD, opined:

> When the issue is whether to calculate the allowed amount for medical bills based on the fee schedule in the provider state or on the UCR charge method, the difference in the medical services to class members does not make this case inappropriate for class handling. The allowed amount for all class medical bills to class members can be calculated using a systematic formulaic mathematical process that does not require consideration of differences in medical service provided to each class member.

In Dr. Luke's opinion, "[t]here is nothing in the dispute that requires the review of medical records or the manual review of medical bills" because health care providers use standard codes in their billing and a single reimbursement percentage of the UCR rate could be applied to their bills.

However, Dr. Luke acknowledged there are other ways to set an allowed amount. He believed New Jersey's fee schedule could be relevant in determining the reasonableness of a charge, even if the schedule did not apply, and it could be reasonable to consider the amounts paid for medical services in the geographical area. He further opined eighty percent of the UCR rate was the

"most appropriate" method "under the facts in this case" because it was consistent with "Nationwide's standard procedure" and, as such, consistent with how Nationwide has treated other policyholders, except in New Jersey.

Defendants' expert, L. Lamar Blount, CPA, CFF, opined there are various accepted methodologies for determining the amount to be paid for a medical service, any of which could be considered reasonable. Blount noted Nationwide applied different methodologies generally and specifically as to the insured plaintiffs' medical bills. He further commented Nationwide's contracts did not reference any particular methodology for determining reasonable expenses.

In Blount's opinion, the best measure of a reasonable fee was the average amount collected by physicians in the same geographic area because that amount represented the closest measure of the actual payment. He therefore implemented that measure in assessing the reasonableness of the payments made on the insured plaintiffs' claims. Blount opined charged rates "are not a reliable basis for establishing reasonableness" because they "are all over the board."

Addressing plaintiffs' claims that Nationwide did not pay their reasonable expenses, Blount opined, this state's rate schedule was "a valid proxy for determining 'reasonable expenses' as this is the mandated payment rate schedule as set by the State of New Jersey," and its "payment rates are significantly

12

greater than those required by the Commonwealth of Pennsylvania"; Nationwide paid the health care provider plaintiffs 100% for Sibalich's claims and 133% for Owens's claims; and "the payments by Nationwide me[t] or exceed[ed] the policy requirement to pay 'reasonable expenses for necessary medical treatment and rehabilitative services.'"  Blount further opined the issue of reasonableness could not be resolved easily on a class-wide basis because Sibalich and Owens had significantly different medical treatments with significantly different medical billing codes.  He concluded these variations would be much greater in the proposed class, such that the question of "reasonable expenses" would vary between class members.

In October 2021, plaintiffs moved for class certification.  Proceedings on the motion continued for several years.  The judge held oral argument on three occasions:  January 28, 2022; August 12, 2022; and April 10, 2024.  Prior to deciding the motion, the judge sua sponte ordered the parties to contact the New Jersey and Pennsylvania insurance regulators to gauge their interest in participating in the litigation, and whether there were proceedings raising similar issues in the past seven years.  Both inquiries yielded negative results.

13

In their motion, plaintiffs sought certification of the following insured class and New Jersey sub-class[5]:

> 1. Insured Class: All persons insured under motor vehicle insurance policies issued by Nationwide and its underwriting affiliates in the Commonwealth of Pennsylvania who filed or had claims filed on their behalf for first-party PIP benefits for injuries sustained in a motor vehicle accident, whose medical treatment was provided in whole or in part by health care providers located outside of Pennsylvania, and whose first-party PIP benefits for medical treatment or rehabilitative services were paid by Nationwide, directly or through a subsidiary or affiliate, according to a state fee schedule.
>
> 2. New Jersey Insured Sub-Class: All persons insured under motor vehicle insurance policies issued by Nationwide and its underwriting affiliates in the Commonwealth of Pennsylvania who filed or had claims filed on their behalf for first-party PIP benefits for injuries sustained in a motor vehicle accident, whose medical treatment was provided in whole or in part by health care providers located in New Jersey, and whose first-party PIP benefits for medical treatment or rehabilitative services were paid by Nationwide, directly or through a subsidiary or affiliate, according to a state fee schedule.

---

[5] Plaintiffs also sought certification of a class, and a New Jersey sub-class, of health care providers. Having previously dismissed the claims against the health care provider plaintiffs, the motion judge deemed that aspect of plaintiffs' motion moot.

14

In a written decision accompanying the May 16, 2024 order denying class certification, the motion judge thoroughly considered the allegations set forth in plaintiffs' third amended complaint, the procedural history, the evidence included in the motion record, the parties' arguments, and the law governing class certification. In essence, the judge found the insured plaintiffs established three of the four requirements for class certification under Rule 4:32-1(a)— "numerosity," "commonality", and "adequacy of representation"—but failed to establish the fourth requirement, "typicality." The judge further found the insured plaintiffs failed to establish the prerequisite for class certification under Rule 4:32-1(b)(3), that is, "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."

After the insured plaintiffs filed this appeal as of right, see R. 2:2-3(b)(9), the motion judge issued a consent order on July 1, 2024, adjourning the August 12, 2024 trial date and staying all further proceedings pending disposition of the appeal.

On appeal, the insured plaintiffs maintain the judge erroneously denied their motion for class certification. Initially, they argue their claims are typical of the putative class members under Rule 4:32-1(a)(3), "as they all involve Nationwide's payment of first-party benefit claims using inapplicable out-of-

15

state fee schedules."  The insured plaintiffs further contend they "can establish their claims on a class-wide basis."  Lastly, they claim "[a] class action is superior to any alternative means of adjudication" under Rule 4:32-1(b)(3).

## II.

"A class action 'is a procedural device that permits one or more members of the class to sue or be sued as representative parties on behalf of all members.'" Pace v. Hamilton Cove, 258 N.J. 82, 96 (2024) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:32-1 (2024)).  Thus, class actions are an exception to the rule that litigation is pursued only on behalf of the named parties.  Little v. Kia Motors Am., Inc., 242 N.J. 557, 581 (2020); Dugan v. TGI Fridays, Inc., 231 N.J. 24, 46 (2017); Iliadis v Wal-Mart Stores, Inc., 191 N.J. 88, 103 (2007).  A class action "furthers numerous practical purposes, including judicial economy, cost-effectiveness, convenience, consistent treatment of class members, protection of defendants from inconsistent obligations, and allocation of litigation costs among numerous, similarly-situated litigants." Little, 242 N.J. at 581 (quoting Dugan, 231 N.J. at 46).  "The class action device 'also helps to equalize adversaries, a purpose that is even more compelling when the proposed

class consists of people with small claims.'" Ibid. (quoting Iliadis, 191 N.J. at 104).

Modeled after its federal counterpart, Rule 23 of the Federal Rules of Civil Procedure, the standards applicable to class certification are set forth in Rule 4:32-1. In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 424-25 (1983).

Rule 4:32-1(a) establishes four initial requirements for class certification, "frequently termed 'numerosity, commonality, typicality[,] and adequacy of representation.'" Dugan, 231 N.J. at 47 (quoting Lee v. Carter-Reed Co., 203 N.J. 496, 519 (2010)). The Rule provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> [R. 4:32-1(a).]

All four requirements of subsection (a) must be satisfied to maintain a class action. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 173 (2021). But that is not the end of the inquiry. If the plaintiff satisfies each requirement under paragraph (a) of Rule 4:32-1, the motion court must next consider the

17

three subsections of paragraph (b) of the Rule, which requires satisfaction of one

of three alternatives. The third subsection is pertinent to this appeal:

> (3) the court [must] find[] the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The factors pertinent to the findings include:
>
> > (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> >
> > (C) the desirability or undesirability in concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the difficulties likely to be encountered in the management of a class action.
>
> [R. 4:32-1(b)(3).]

Although the party seeking class certification bears the burden of proof in

establishing the requirements of Rule 4:32-1, Iliadis, 191 N.J. at 106, the

applicable rule should be liberally construed in favor of certification, Pace, 258

N.J. at 98. In deciding a motion for class certification, the court does not

18

consider the merits of the case. Lee, 203 N.J. at 505. The court must accept as true the allegations in the complaint and consider all facts in the record in a light that is favorable to the plaintiffs. Ibid.

Nonetheless, the court must rigorously analyze whether the requirements for class certification have been satisfied, which will require consideration of the claims, defenses, relevant facts, and the applicable law. Id. at 505-06; see also Iliadis, 191 N.J. at 106-07. If the allegations in the complaint do not lend themselves to class certification, dismissal of the class action allegations is appropriate. Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 476-77 (App. Div. 2015). When a court denies class certification, the named plaintiffs may continue to pursue their individual claims. See id. at 465.

We review the court's order on class certification for abuse of discretion. Dugan, 231 N.J. at 50. We consider whether the motion court followed the standards set forth in Rule 4:32-1, and reached a rational decision consistent with the applicable law and the relevant facts. Id. at 49-50.

Against those legal principles, we turn to the motion court's decision in the present matter. We confine our review to the insured plaintiffs' challenges to the judge's findings they failed to establish typicality under Rule 4:32-1(a)(3) and predominance and superiority under Rule 4:32-1(b)(3).

19

## A. Typicality

"The claims of a putative class representative are typical if they 'have the essential characteristics common to the claims of the class.'" Laufer v. U.S. Life Ins. Co., 385 N.J. Super. 172, 180 (App. Div. 2006) (quoting In re Cadillac, 93 N.J. at 425). Typicality is not a demanding test; it is satisfied if the class representative's claims arise from the same practice or conduct of the defendant and are based on the same legal theory of other class members. Ibid.

In his decision on typicality, the motion judge found, in pertinent part:

> While the [insured] plaintiffs and the putative class members share certain characteristics in common, they are quite limited: they all reside in Pennsylvania; they were all issued Nationwide auto insurance policies; they were all treated by New Jersey out-of-state health care providers. But, there the similarities end. Every claimant's accidents and injuries are different and distinct; every health care provider is different and distinct; most of the provider's billing practices are individualized and distinct; each claimant/patient's medical history is unique. The fact that Nationwide's insureds are all allegedly paid at a reduced rate that [the insured] plaintiffs contend is unreasonably low across the board is not enough to establish typicality: the claims involved are more different, unique, and complex to evaluate than they are alike. The fact that Nationwide used and relied on the New Jersey auto fee schedules, as alleged, to gauge or determine the reasonable reimbursement rate to be paid, is not per se illegal. While there is no legal or enforceable requirement that Nationwide must apply the New Jersey auto fee schedules for health care services

A-2879-23

provided to out-of-state policy holders, there is no authority that precludes or bars Nationwide from using those schedules as a barometer or measure of reasonableness, or as a factor among other factors to determine reasonableness.

Based on our review of the record, we recognize the insured plaintiffs seek certification of an extremely divergent class, involving every situation in which Nationwide applied a non-Pennsylvania state fee schedule to a Pennsylvania insured. They also seek certification of a slightly less divergent sub-class, involving every situation in which Nationwide applied New Jersey's fee schedule to a Pennsylvania insured. They allege Nationwide's application of non-Pennsylvania state fee schedules constituted: (1) a breach of contract, namely, the obligation under the insurance policy terms to pay "all reasonable expenses for necessary medical treatment and rehabilitative services"; and (2) bad faith toward the insured in violation of 42 Pa. Cons. Stat. § 8371.

We acknowledge for each member of the proposed class and sub-class, Nationwide applied a state fee schedule to a line item on an insured's medical bill, as to which the billing code for that line item was addressed by a state fee schedule. That practice, alone, could satisfy the typicality requirement, given the low bar for a typicality finding.

A-2879-23

However, Nationwide's reliance on a state fee schedule does not necessarily constitute an actionable wrong and certainly does not do so on a class basis. Indeed, there is no legal barrier to Nationwide's use of New Jersey's fee schedule to determine the reasonableness of charges for medical treatments of its insureds treated in this state. Nationwide's utilization of a fee schedule will differ depending on the unique circumstance of each insured's injuries and treatment. Thus, each of the class members' injuries would be distinct—as would their health care providers, treatment, medical history, and insurance payments.

We conclude, although the motion judge could have found typicality under Rule 4:32-1(a)(3), the failure to do so does not constitute an abuse of discretion. However, even if the judge's typicality finding was erroneous, that finding does not end our analysis. For the reasons that follow, we discern no error in the judge's findings under Rule 4:32-1(b)(3), which independently warranted denial of the class certification motion.

### B. Predominance and Superiority

The predominance inquiry under Rule 4:32-1(b)(3) is more demanding than the requirement under Rule 4:32-1(a)(2), which requires common questions of law or fact. Baskin, 246 N.J. at 175; Dugan, 231 N.J. at 48. The

predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).

"When considering the issue of predominance, it is necessary to analyze the movant's underlying theories of liability, the proofs necessary to establish them, and the predictable defenses to the legal claims." Varacallo v. Mass. Mut. Life Ins. Co., 332 N.J. Super. 31, 42 (App. Div. 2000). The predominance test does not require an absence of individual issues, including those regarding damages, nor does it require that the common issues are dispositive of the entire dispute. Baskin, 246 N.J. at 175. Rather, when considering the predominance of questions of law or fact, the court should assess "the significance of the common questions," which "involves a qualitative assessment of the common and individual questions rather than a mere mathematical quantification of whether there are more of one than the other." Lee, 203 N.J. at 519-20.

As for the superiority question, this requires a comparison of class litigation versus alternative procedures. Iliadis, 191 N.J. at 114. "Whether a class action is superior to thousands of minor, individual actions" "involves considerations of fairness to the putative class members and the defendant[s]," as well as considerations of efficiency, and "whether any one individual who

23

has suffered a wrong will have the financial wherewithal or incentive to prosecute a claim that might cost more than its worth." Lee, 203 N.J. at 520. "Although class certification may be denied on manageability grounds, such an approach is strongly disfavored." Id. at 521; Iliadis, 191 N.J. at 117-18.

In the present matter, the motion judge made the following findings, in relevant part, on predominance and superiority under Rule 4:32-1(b)(3):

> [T]here exist a host of individual issues that relate uniquely to each claimant and his/her individual personal and medical situation and medical history, and treatment regimen. Added to this are the potential dozens of variables that apply without question to the many health care treatment providers involved. At this stage, some 2,800 potential claimants are reportedly involved potentially, and that is before any class discovery has been conducted. Each of these claimants received treatment at one or more different providers' facilities, and while there may be some duplication of providers, it is quite vague and unclear at best as to how any duplication of provider identity would make the task of determining reasonableness of payments more efficient or a less onerous task.

Citing our decision in Atlantic Ambulance Corp. v. Cullum, 451 N.J. Super. 247 (App. Div. 2017), and the Third Circuit's decision in DiCarlo v. St. Mary Hospital, 530 F.3d 255 (3d Cir. 2008), the motion judge noted, although the facts of these cases varied from the present matter,

> a basic principles emerges: When the issue is to determine what reasonable health costs are or may be,

there are a host of factors at play that must be evaluated when considering whether a health care provider's bill is reasonable. Not only factors and variables that apply to the specific health care provider, . . . but also factors that apply to the individual plaintiff/insured: what were the particular circumstances of the patient[,] such as for example, age, degree of pain or distress, was the patient treated in an emergency setting or a regular follow up appointment, was a consult with another provider involved, did the patient have . . . an agreement or long-standing arrangement or relationship with the health care provider that resulted in discounting the bill and if so to what degree?

The judge elaborated:

The claims presented by [the insured p]laintiffs and putative plaintiffs in this case are unique and varied; each claim has its own "DNA" and these claims will not be more justly and effectively resolved by using the class action vehicle; to allow these claims to go forward in a class action modality is either to invite a broad-brush one-size-fits-all approach (some would say "sledgehammer" mentality) where—while some claims may be amenable to resolution as a result—it is impossible to visualize how the majority of claims could be reviewed and resolved short of having mini-trials or plenary hearings as to each claim. This probability derails the class action train. [Nationwide] ha[s] argued, persuasively, that [its] affirmative defenses and ability to produce evidence to contest or challenge these claims on an individual basis will be impaired or abridged in the class action mode, and that [it is] entitled to the full scope of due process in defending [its] positions, including the full range of individualized discovery to which all litigants are entitled under our Court Rules.

25

We discern no error in the motion judge's analysis. Initially, as to the proposed multi-state class, there exists the question of divergent state law, which plaintiffs have not addressed. In particular, the applicability of state fee schedules may differ from state to state, including whether application of the state fee schedule was mandatory, permissive, or impermissible under the circumstances presented. Resolution of this issue would require consideration of each state's fee schedule for each class member's claim. See Beegal v. Park West Gallery, 394 N.J. Super. 98, 114 (App. Div. 2007) ("In multi-state class actions, variations in state law may swamp common issues and defeat predominance."); see also Carroll v. Cellco P'ship, 313 N.J. Super. 488, 496-98 (App. Div. 1998) (holding the motion court erroneously decided class certification by not "examining the different state laws and resolving whether any conflicts in laws might lead to individual questions of law").

Further, predominance and superiority problems exist in the context of the proposed New Jersey sub-class. The motion judge concluded New Jersey's fee schedule does not mandatorily apply to Pennsylvania insureds. See N.J.S.A. 39:6A-4.6; N.J.A.C. 11:3-29.1. However, the judge did not rule applying the New Jersey fee schedule to Pennsylvania insureds was permissible, or that payment of the New Jersey fee schedule amount was a reasonable

reimbursement. See, e.g., In re Adoption of N.J.A.C. 11:3-29, 410 N.J. Super. 6, 37 (App. Div. 2009) (holding the "appellants ha[d] not met their burden of showing that the methodology for setting the PIP reimbursement rates was flawed or that the rates set violated the statutory mandate to represent the reasonable and prevailing rates of 75% of the practitioners in the area").

Ultimately, the determinative questions on the insured plaintiffs' causes of action are whether Nationwide complied with its contractual obligation, under the policy terms, to pay "all reasonable expenses for necessary medical treatment and rehabilitative services" and acted in bad faith by relying upon a state fee schedule with respect to reasonableness. To establish breach of contract, plaintiffs must prove there was a contractual obligation defendants breached, and that the breach resulted in damages. Matthews v. Unisource Worldwide, Inc., 748 A.2d 219, 221 (Pa. Super. Ct. 2000).[6] Contract interpretation presents a question of law that should be resolved based upon the language of the contract, unless the contract language is ambiguous, in which case extrinsic evidence may be considered in determining and effectuating the parties' intent. See Commonwealth ex rel. Kane v. UPMC, 129 A.3d 441, 463

---

[6] The parties do not dispute Pennsylvania law governs the interpretation of the Nationwide policies at issue as the policies were issued in that state to Pennsylvania policyholders.

(Pa. 2015). Ambiguities in insurance policies are "construed in favor of the insured." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006) (quoting 401 Fourth St. v. Invs. Ins. Co., 879 A.2d 166, 170 (Pa. 2005)).

The record reflects no singular definition of "reasonable expenses" regarding a reimbursement rate for medical expenses. To the contrary, there is ample evidence in the record of various methods for determining the reimbursement rate for a medical expense, any of which could be considered reasonable depending on the circumstances. Indeed, in its "course of conduct"/"course of performance" Nationwide itself applied numerous methods for determining a reimbursement rate. Thus, it is not necessarily true that Nationwide's payment of a line item on a medical bill pursuant to a state fee schedule, or the New Jersey fee schedule in particular, resulted in a failure to pay "reasonable expenses" because, for any given bill, Nationwide could reimburse different line items applying different rules. See St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co., 342 Fed. Appx. 809, 813-15 (3d Cir. 2009) (rejecting allegations the insurers breached their contracts with the insureds by utilizing a computer program to generate reimbursement rates for medical claims). As the motion judge correctly found, here, whether Nationwide

fulfilled its contractual obligation to pay the class members' reasonable expenses would require the trier of fact to engage in a fact-specific inquiry as to each class member. See Atl. Ambulance, 451 N.J. Super. at 258-61 (affirming denial of class certification for breach of contract claim premised upon alleged unreasonable ambulance charges).

The insured plaintiffs maintain Nationwide adopted a hierarchy of mechanical rules to calculate a reasonable reimbursement (PPO, state fee schedule, percent of UCR rate, billed amount) and, if payment at the fee schedule was deemed unreasonable by the finder of fact, Nationwide would be required to pay at the next level on its hierarchy (eighty percent of the UCR rate). Thus, the insured plaintiffs argue no claim-by-claim review or calculation would be necessary. Although that is a possible outcome, as a matter of due process, Nationwide is entitled to present every possible defense to that argument, Little, 242 N.J. at 581-82, and present evidence that its reimbursements were reasonable, regardless of how they were calculated.

Further, the record reflects Nationwide's hierarchy of rules was not sacrosanct. In its course of conduct, Nationwide deviated from its hierarchy of rules, depending on the circumstances, including whether a medical provider contested the reimbursement and negotiated a different result. Thus, resolution

of "reasonableness" does not appear as simple as the insured plaintiffs allege. Rather, a reasonableness determination would require resolution of numerous questions of law and fact, on an individual basis, regarding each class member. Accordingly, individual issues predominate over the common issue, and a class action is not superior to individual actions. See Atl. Ambulance, 451 N.J. Super. at 258-61; Beegal, 394 N.J. Super. at 112-13; In re State Farm Fire & Cas. Co., 872 F.3d 567, 577 (8th Cir. 2017) (holding "although we do not rule out the possibility that State Farm's use of the Xactimate estimating methodology would produce an unreasonable estimate of the actual cash value of some partial losses, this issue may only be determined based on all the facts surrounding a particular insured's partial loss").

Other issues abound. The trier of fact would be required to resolve individualized questions regarding the ability and willingness of any given class member to pursue a claim, entailing consideration of each class member's relationship with his or her medical provider, each class member's medical needs, and the extent of the member's insurance coverage. These types of issues are fundamental as they relate to the ability of each class member to pursue a claim against Nationwide and the merits of each member's claims. They are not peripheral, "remainder issues." See Iliadis, 191 N.J. at 112.

30

These questions can only be answered through discovery from each class member and their medical providers, who could be potential third-parties to the litigation. "Given the greater number of questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions, any overarching dispute about" the applicability or inapplicability of the state fee schedule cannot satisfy the predominance standard under Rule 4:32-1(b)(3). Amchem Prods., 521 U.S. at 624.

As the motion judge ultimately concluded here, determining

> the reasonable cost for a particular, and particularized health care service provider's services on and for each date on which services were rendered to an individual insured/patient/individual auto accident survivor . . . requires the fact finder to determine reasonableness on a case by case, claim by claim basis, and then assess whether Nationwide's evaluation was reasonable or unreasonable.

Accordingly, the judge "[wa]s not persuaded that these claims can be justly and efficiently handled and resolved in a class action modality." We discern no basis to disturb the judge's decision.

To the extent not addressed, the insured plaintiffs' remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-2879-23

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2879-23